

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00596-CV

**BROWN SIMS, P.C.** and Nelson D. Skyler,
Appellants

v.

**L.W. MATTESON, INC.**, AGCS Marine Insurance Company, and New York Marine and
General Insurance Company,
Appellees

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-18-55
Honorable Jose Luis Garza, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: September 30, 2019

AFFIRMED IN PART; REVERSED IN PART

At issue in this appeal is whether the TCPA, Texas's anti-SLAPP statute, applies to a

malpractice suit brought by a former client against its attorneys. In considering the plain language

of the TCPA and precedent by the Texas Supreme Court, we conclude (1) the TCPA does apply

to the malpractice suit at issue in this case and (2) the former client established a prima facie case

for its malpractice claim. Thus, we affirm in part the trial court's order denying the motion to

dismiss pursuant to the TCPA. However, because the former client nonsuited other claims before

the hearing on the motion to dismiss, we agree the trial court should have awarded reasonable

attorney's fees and sanctions with respect to those nonsuited claims. Accordingly, we reverse the trial court's order in part.

## BACKGROUND

When L.W. Matteson, Inc. ("Matteson"), a dredging contractor, was sued in March 2012 by its former employee Jose Flores, it hired attorney Nelson D. Skyler and the law firm Brown Sims, P.C. ("Brown Sims") to represent it. Flores had filed a maritime personal injury suit in Starr County, Texas, pursuant to the Jones Act, as codified in 46 U.S.C. § 30104. Flores alleged that Matteson was negligent by failing to furnish him with a reasonably safe place to work and by failing to provide a seaworthy vessel. Flores alleged that in late July 2010, he was working on a dredging vessel owned by Matteson when he believed he was bitten by a spider. Flores received medical treatment for his swollen hand and returned to work in mid-August. He continued working for Matteson until the dredging vessel completed its contract in November. On March 8, 2013, after being diagnosed with liver cancer, Flores passed away. His estate substituted in as plaintiff. In December 2015, the case proceeded to trial, and a jury found Flores's estate was entitled to $41.104 million in damages. Flores's son then filed his own lawsuit against Matteson. Matteson settled both lawsuits for $10 million.

On January 25, 2018, Matteson, along with AGCS Marine Insurance Co. ("AGCS Marine") and New York Marine and General Insurance Co. ("NY Marine"), the insurance companies that provided Matteson with excess coverage, filed the underlying legal malpractice suit against Skyler and the law firm Brown Sims. On appeal, Matteson, AGCS Marine and NY Marine point to two specific alleged breaches of the standard of care by Skyler and Brown Sims: (1) the failure to raise the federal limitation-of-liability statute by either pleading it as an affirmative defense or by filing a limitation-of-liability action in federal court; and (2) the failure to file a special appearance based on lack of personal jurisdiction. Two-and-a-half months later,

Skyler and Brown Sims filed a motion to dismiss pursuant to the TCPA, arguing that the claims brought against them implicated their right to petition and their right to free speech. Matteson, AGCS Marine, and NY Marine responded by arguing that the TCPA did not apply; in the alternative, they produced evidence to support their prima facie case of legal malpractice. After the trial court denied the motion to dismiss, Skyler and Brown Sims filed this interlocutory appeal.

### MOTION TO DISMISS UNDER THE TEXAS CITIZENS PARTICIPATION ACT

The TCPA's stated purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.[1] In an aim to fulfill this purpose, the TCPA provides for dismissal of a "legal action" that "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" unless the plaintiff establishes "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* §§ 27.003(a), 27.005(c).

A party moving for dismissal under the TCPA has the initial burden of showing by a preponderance of the evidence that the legal action "is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the respondent. *See S & S*, 564 S.W.3d at 847. The respondent's claims against the movant will be dismissed unless the respondent can "establish[] by clear and specific evidence

---

[1] The Legislature amended the TCPA in June 2019. However, the amendments to the TCPA apply only to an action filed on or after September 1, 2019. An action filed before September 1, 2019 is governed by the law in effect immediately before September 1, 2019. This case was filed before September 1, 2019. Thus, the 2019 amendments to the TCPA do not apply here, and the TCPA as it existed prior to September 1, 2019 is quoted in this opinion.

a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see S & S*, 564 S.W.3d at 847. The supreme court has explained that "a prima facie case is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *S & S*, 564 S.W.3d at 847 (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). "A finding that [the respondent] has met his TCPA burden does not establish that his allegations are true." *West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019).

If the respondent satisfies his burden, then the burden shifts back to the movant to establish "by a preponderance of the evidence each essential element of a valid defense" to the respondent's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). If, on the other hand, the respondent does not satisfy his TCPA burden, then the trial court must dismiss the legal action. *Id.*

In determining whether the respondent has met its burden, the trial court does not hear live testimony; the TCPA directs courts to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). The supreme court has "recently observed that the pleadings are 'the best and all-sufficient evidence of the nature of the action.'" *West*, 573 S.W.3d at 242 n.8 (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)).

An appellate court reviews issues regarding interpretation of the TCPA de novo. *S & S*, 564 S.W.3d at 847.

A. *Does the TCPA apply?*

The parties dispute whether the TCPA applies in this case. Matteson, AGCS Marine, and NY Marine argue the TCPA does not apply to their claims because (1) no court has ever held it applies to legal malpractice claims; and (2) they are not suing Skyler and Brown Sims for any "communication" made; instead they argue that they are suing Skyler and Brown Sims "for what [they] did not do," i.e. failing to raise the federal limitation-of-liability statute in the answer or file

a motion challenging personal jurisdiction. In contrast, Skyler and Brown Sims contend that "when an attorney is sued for choices made when speaking and petitioning on behalf of a client in court, the TCPA applies."

Under the plain language of the TCPA, "[i]f a legal action is based on, *relates* to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Thus, for the TCPA to apply to this case, the claim brought against Skyler and Brown Sims need only *relate to* their exercise of the right to petition or the right of free speech. *See id*. "[E]xercise of the right to petition" is defined as "*a communication* in *or pertaining to* . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i) (emphasis added). "[E]xercise of the right of free speech" is defined as "*a communication made in connection* with a matter of public concern." *Id*. § 27.001(3) (emphasis added). "Communication" is defined broadly as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual or electronic." *Id.* § 27.001(1). Applying these definitions, in connection with the exercise of the right to petition, the TCPA applies to the malpractice claim brought against Skyler and Brown Sims if it merely *relates to* a communication by Skyler and Brown Sims *in or pertaining to a judicial proceeding*. Regarding the exercise of the right of free speech, the TCPA applies to the malpractice claim brought against Skyler and Brown Sims if it merely *relates to* a communication made by Skyler and Brown Sims in connection with a matter of public concern.

Matteson, AGCS Marine, and NY Marine have alleged that Skyler and Brown Sims committed legal malpractice by failing to include an affirmative defense in the answer they filed on behalf of Matteson in the *Flores* case. The answer filed by Skyler and Brown Sims on behalf of Matteson is most certainly a communication in a judicial proceeding. *See id*. § 27.001(4)(A)(i). While Matteson, AGCS Marine, and NY Marine argue their malpractice suit is based on a failure

to make a communication (i.e. failing to include the federal limitation-of-liability affirmative defense in the answer) and not based on an actual communication, we conclude they are parsing hairs. Matteson, AGCS Marine, and NY Marine have alleged that Skyler and Brown Sims filed a defective communication—the answer—by failing to include a specific affirmative defense. That the answer did not include this specific affirmative defense does not mean that Skyler and Brown Sims have not been sued for making a communication in a judicial proceeding. The basis of the allegations against them relate to their alleged defective communication. *See id*. We therefore conclude the TCPA applies to the malpractice claim brought against Skyler and Brown Sims because the claim *relates to* the exercise of the right to petition.[2]

### B. Is there an exemption for legal malpractice cases?

Matteson, AGCS Marine, and NY Marine argue that the TCPA does not apply to legal malpractice actions, emphasizing that no court has made such a holding. Last year, however, the Texas Supreme Court in *Youngkin v. Hines*, 546 S.W.3d 675, 678 (Tex. 2018), did discuss the applicability of the TCPA in the context of a nonclient suing an attorney based, in part, on statements made in open court by the attorney on behalf of his clients. In considering whether the attorney was entitled to dismissal of the claims under the TCPA, the supreme court emphasized that in determining the applicability of the TCPA, a court's objective "is to determine and give effect to the Legislature's intent" by considering the "statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Id*. at 680 (citations omitted).

---

[2] Having held the TCPA applies because the claim relates to Skyler's and Brown Sims's exercise of the right to petition, we need not determine whether it also relates to Skyler's and Brown Sims's exercise of the right of free speech.

The lawyer in *Youngkin* argued the TCPA applied to the tort claims brought by the nonclient because those claims stemmed from the lawyer's recitation of a Rule 11 agreement in open court—that is, he argued the claims related to his exercise of the right to petition. *See id*. In response, the nonclient argued the TCPA did not apply because "an attorney speaking for a client in a courtroom is not exercising any personal First Amendment rights at all." *Id.* In analyzing whether the TCPA applied to the nonclient's claims, the supreme court "substitute[ed] the statutory definitions for the defined terms" and concluded "the TCPA applies to a legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding." *Id.* According to the supreme court, "[b]y any common understanding of the words, [the lawyer] made a statement in a judicial proceeding." *Id.*

The court, however, did not end its analysis there, explaining that a court should not look at isolated provisions without considering the context of a statute as a whole. *See id*. at 680-81. In considering the entire statute, the court noted that the "text of the TCPA itself explicitly acknowledges that the Act is intended to safeguard the constitutional rights of speech, petition, and association (without foreclosing the ability to bring meritorious lawsuits)." *Id.* at 681 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.002). The court "s[aw] no conflict between the plain meaning of the definition of the exercise of the right to petition and the statute's express purpose." *Id.* Further, the court emphasized that the nonclient's "argument that [the lawyer] cannot invoke the TCPA because the First Amendment right to petition does not encompass [the lawyer]'s in-court statements attempts to add a requirement to the statute that does not exist in its text." *Id.* According to the court, "[i]t does not follow from the fact that the TCPA professes to safeguard the exercise of certain First Amendment rights that it should *only* apply to constitutionally guaranteed activities." *Id.* (emphasis in original). "Because the Legislature explicitly defined the

term 'exercise of the right to petition,' injecting such a requirement into the TCPA would be disloyal to its enacted text." *Id*. The supreme court explained that "[w]hether that definition maps perfectly onto the external constitutional rights it aims to protect is irrelevant; we are bound by the statutory definition for the purposes of the TCPA." *Id.* Therefore, the supreme court held the TCPA applied to the claims brought by the nonclient against the lawyer, even though the lawyer had made the statement on behalf of his client and not on his own behalf. *See id*.

Given this holding by the supreme court in *Youngkin* and the plain language of the TCPA, we also must conclude the TCPA applies to the malpractice claim brought in this case. While the TCPA specifically states that it does not apply to certain actions, it does not include a legal malpractice action as one of those exemptions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010. We therefore conclude that Skyler and Brown Sims have met their initial burden of showing the TCPA applies in this case.

> ### C. Did Matteson, AGCS Marine, and NY Marine establish by clear and specific evidence a prima facie case for each essential element of their malpractice claim against Skyler and Brown Sims?

We must now consider whether Matteson, AGCS Marine, and NY Marine established by clear and specific evidence a prima facie case for each essential element of their malpractice claim. *See S & S*, 564 S.W.3d at 847. To recover on a claim for legal malpractice, a plaintiff must establish: (1) the attorney owed a duty of care to the plaintiff; (2) the attorney breached that duty; and (3) the attorney's breach proximately caused damage to the plaintiff. *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). "When a legal-malpractice case arises from prior litigation," the plaintiff must also prove that he "would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Id.* at 401.

Given Skyler and Brown Sims represented Matteson in the prior litigation, the parties do not dispute Skyler and Brown Sims owed Matteson a duty. *See Barcelo v. Elliot*, 923 S.W.2d 575,

577 (Tex. 1996).[3] The parties do dispute whether Skyler and Brown Sims breached that duty and whether any such breach proximately caused damage to Matteson. In response to the motion to dismiss pursuant to the TCPA, Matteson, AGCS Marine, and NY Marine attached evidence to prove a prima facie case of malpractice, including (1) the affidavit of Christopher J. Leavitt, the lawyer who represented Flores in the suit against Matteson, and (2) the affidavit of Jeffrey Bale, a maritime lawyer with over thirty-five years of experience "who regularly defends maritime personal injury actions in Texas, including actions litigated in the context of limitation of liability proceedings." The affidavits of both Leavitt and Bale establish that they are, respectively, experts in the field of maritime law and that they reviewed the pleadings, affidavits, depositions, reports, and other documents related to the underlying *Flores* case. Additionally, because Leavitt represented Flores in the prior litigation, Leavitt's affidavit affirms that he was "actively involved in case strategy, discovery, motion practice, case evaluation, settlement discussions, [the] trial, and [the] ultimate resolution of the case." Thus, Leavitt affirms the facts stated in the affidavit "are based on [his] personal knowledge as counsel in the *Flores* case, and the opinions given are based upon [his] personal knowledge, as well as [his] skill, experience, training, and education as a lawyer who regularly handles personal injury actions, Jones Act cases, and lawsuits against dredging contractors, both in Starr County and in Harris County, and throughout Texas."

Both affidavits criticize Skyler and Brown Sims for failing (1) to file a special appearance based on Matteson's lack of minimum contacts with Texas, (2) to raise as an affirmative defense the Shipowners' Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, or (3) to file a Petition

---

[3] AGCS Marine and NY Marine, as excess insurers, have "the right to assert a legal malpractice claim against the insured's [i.e., Matteson's] defense attorney through equitable subrogation." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 700 (Tex. 2000). According to the supreme court, although an excess insurance carrier is not itself a client, "permitting an excess carrier to stand in the shoes of its insured and assert the insured's claims [does] not burden the existing attorney-client relationship with additional duties or create potential conflicts of interest for the attorney." *Id*. "Subrogation permits the insurer only to enforce existing duties of defense counsel to the insured." *Id*. (quoting *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex. 1992)).

for Exoneration or Limitation of Liability in federal court pursuant to the Act. According to Leavitt's affidavit, Starr County was chosen as the venue to bring Flores's suit against Matteson because (1) Flores had been "a life-long resident of Starr County" and was "a resident of Starr County at the time his cause of action arose," and (2) "Starr County is known as producing plaintiff-favorable results in Jones Act cases" and "in particular, dredge cases." In Leavitt's expert opinion and based on his experience in having filed cases in and outside of Starr County, "the value of personal injury cases in Starr County is higher than in other jurisdictions where [he had] also filed cases and settled them or tried them to verdict."

Leavitt explained that a "Jones Act cause of action permits a seaman to sue his employer for personal injuries caused by negligence and also for unseaworthy conditions of the vessel pursuant to the general maritime law of the United States." Leavitt stated that a reasonably diligent defense counsel representing a company like Matteson would "use all procedural mechanisms" at his "disposal to move the case out of Starr County in order to guard against an unfavorable result from the defense perspective." Leavitt noted that at the time Skyler and Brown Sims filed an answer on behalf of Matteson in the *Flores* case, Matteson's home office was in Iowa, it did not have an office in Texas, and the cause of action arose in Louisiana where Flores was injured. Thus, in Leavitt's expert opinion, a reasonable attorney would have filed a special appearance, which if upheld, would have moved the lawsuit to Louisiana, the location of the incident, or Iowa, Matteson's principal place of business. Based on Leavitt's experience, a successful special appearance would "have resulted in a lower settlement value being applied to" the *Flores* case, and "would have also resulted in a lower judgment, or a defense verdict." Further, regardless of the ruling on the special appearance, the mere filing of the special appearance "would have allowed an interlocutory appeal which would have suppressed the value of the *Flores* case by virtue of the delay it caused." According to Leavitt, "[s]peed and velocity are a Plaintiff's best friend" while

"any delays are an enemy to the value of a case." Thus, in his expert opinion, the delay involved in an interlocutory appeal would "have resulted in a lower case evaluation from Plaintiff's perspective, and eventually a lower settlement value being applied" in the *Flores* case.

In addition to Skyler and Brown Sims's failure to file a special appearance, Leavitt criticized them for failing to raise the limitation of liability to the value of the vessel under maritime law as an affirmative defense in state court or by filing a limitation action in federal court. "The Limited Liability Act allows a vessel owner to limit its liability for any loss or injury caused by the vessel to the value of the vessel and its freight." *In re Hellenic, Inc.*, 252 F.3d 391, 394 (5th Cir. 2001); *see* 46 U.S.C. §§ 30505-06. However, under the Act, "a party is entitled to limitation only if it is 'without privity or knowledge' of the cause of the loss." *Id.* (quoting *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 504 (5th Cir. 1994)). "If the shipowner is a corporation, 'knowledge is judged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss.'" *Id.* (quoting *Brunet*, 15 F.3d at 504). "Once the claimant establishes negligence or unseaworthiness, the burden shifts to the owner of the vessel to prove that negligence was not within the owner's privity or knowledge." *Id.*

Further, under the Act, the "owner of a vessel may bring a civil action in a district court of the United States for limitation of liability . . . within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a). When such an action is brought, the owner of the vessel shall

(1)     deposit with the court, for the benefit of claimants–
(A)     an amount equal to the value of the owner's interest in the vessel and pending freight, or approved security; and
(B)     an amount, or approved security, that the court may fix from time to time as necessary to carry out this chapter; or

> (2)    transfer to a trustee appointed by the court, for the benefit of claimants–
>
>     (A)    the owner's interest in the vessel and pending freight; and
>
>     (B)    an amount, or approved security, that the court may fix from time to time as necessary to carry out this chapter.

46 U.S.C. § 30511(b). Once an owner has created a fund as described, "all claims and proceedings against the owner related to the matter in question . . . cease." *Id.* § 30511(c). "[W]here a single claimant sues a shipowner in state court and the owner files a petition for limitation of liability in federal court, the federal court must allow the claimant's action to proceed in state court while retaining jurisdiction over the limitation of liability action." *In re Tetra Applied Tech. L.P.*, 362 F.3d 338, 340 (5th Cir. 2004) (citing *Langnes v. Green*, 282 U.S. 531, 541-43 (1931)). However, "the federal court may enjoin the state court proceeding unless the claimant agrees to withdraw any state submissions relating to the limitation of liability." *Id.* at 340-41. This approach may extend "to allow the state action to proceed in cases with multiple claimants where the total value of the claims does not exceed the value of the limitation fund, so long as the claimants stipulate to exclusive federal jurisdiction over the limitation of liability issues." *Id.* at 341. Thus, "claims may proceed outside the limitation action (1) if they total less than the value of the vessel, or (2) if the claimants stipulate that the federal court has exclusive jurisdiction over the limitation of liability proceeding and that they will not seek to enforce a greater damage award until the limitation action has been heard by the federal court." *Id.* (citation omitted).

According to Leavitt's affidavit, if limitation of liability had been raised as an affirmative defense in the answer filed by Skyler and Brown Sims on Matteson's behalf in state court, Flores "would have stipulated to a limitation fund of the value of the *Iowa*, or $1,960,000."[4] This

---

[4] In their response to the TCPA motion, Matteson, AGCS Marine, and NY Marine also filed an affidavit by Larry Matteson, Matteson's vice-president. In his affidavit, Larry Matteson affirmed that Matteson is an Iowa corporation

stipulation "would have limited Matteson's exposure to $1,960,000," which was "substantially less than the eventual $41,104,000 verdict" or the $10,000,000 post-verdict settlement.[5] According to Leavitt, from the plaintiff's perspective, "[t]his limitation fund would have resulted in a lower case evaluation" and "eventually a lower settlement value being applied" to the *Flores* case. Leavitt affirmed that Flores's written demand in his original petition was $2,500,000, which was much less than the jury's verdict or the post-verdict settlement.

Leavitt further explained that with "respect to filing a Petition for Exoneration of Limitation of Liability in federal court, if this defense had been pursued, it would have resulted in a different result on retrial of this case, as well as a lower case evaluation from Plaintiff's perspective, and eventually a lower settlement value in" the *Flores* case. According to Leavitt, a "limitation action in this matter would have been rightfully filed in the United States District Court, Southern District of Texas, McAllen Division." "Filing a limitation action in this case would have stayed the state court *Flores* case." "Even if the stay was ultimately lifted and the *Flores* case was returned to Starr County for trial, Matteson would have had an absolute right to try the limitation

---

with its principal place of business in Iowa. According to the affidavit, Matteson is a dredging contractor, has "conducted operations around the country," but does not have any office in Texas. The affidavit states that Flores at the time of his injury was assigned to work aboard the *Melissa K.* as a deckhand. The *Melissa K.* was a tender to the dredge *Iowa*. The affidavit states that deckhands "were not typically assigned to work aboard a dredge, but aboard another vessel, and for Flores, this was the *Melissa K.*" According to the affidavit, on the date Flores was injured, "the dredge *Iowa*, which is not self-propelled, was operating on the Mississippi River in Louisiana, under an Army Corps of Engineers dredging contract." The affidavit states that on the date of injury, the "*Melissa K.* had a value of $75,000," which was based on the "'hull agreed valuation' on the 'renewal schedule of vessels' made part" of Matteson's primary insurance policy. "The dredge *Iowa* that the *Melissa K.* tended had a hull agreed valuation of $1,960,000 at the end of the" date of injury. According to the affidavit, under the dredging contract, Matteson "was paid a daily rate for work performed under the contract," and on the date of injury, "the amount paid under contract for dredging operation was $15,447." We note that in their brief, Skyler and Brown Sims argue that there is no evidence that Flores would have accepted a lower settlement amount than the eventual $10 million settlement amount. We disagree. Flores's original petition demanded $2,500,000. In his affidavit, Leavitt, who represented Flores at trial, explains in detail why Flores would have stipulated to a limitation fund of $1,960,000.

[5] Larry Matteson in his affidavit affirms that after the jury's verdict, Matteson hired separate counsel to represent it, and after reviewing the case, its new counsel, a former Chief Justice of the Texas Supreme Court, recommended Matteson settle for $10 million. While Skyler and Brown Sims argue AGCS Marine and NY Marine have not presented any evidence that the $10 million settlement they paid was reasonable under the circumstances, we conclude that the affidavit is sufficient to show Matteson's decision to settle for that amount was reasonable.

action in federal court, *i.e.*, to reduce the damages awarded in the *Flores* case to the value of the vessel and pending freight." Leavitt explained while the *Flores* case was tried to a jury, a limitation action would be tried "to the court without a jury," which in his opinion would "have resulted in much lower damages on trial of the limitation action, or a defense judgment." In his expert opinion and based on his knowledge of the background of the *Flores* case and the discovery that had occurred, Leavitt also thought Matteson "could have proven lack of privity and knowledge."[6]

Leavitt recognized in his affidavit that "claimants in a limitation proceeding" attempt to use the "flotilla doctrine" "to increase the value of a limitation fund." According to Leavitt, the flotilla doctrine "aggregates the value of vessels working at a common purpose, and in the case of dredging activities, as in the Flores case, considers the value of the contract depending upon the activities at the time of the incident." Leavitt explained a court "does not consider the value of the entire contract but looks at the discrete activity which gives rise to the incident or personal injury being claimed by the claimant, depending, of course, on the nature of the activity and the nature of the contract." In Leavitt's expert opinion, the "mere filing of a limitation action has a depressing effect on the value of Jones Act cases, first because of the disruptive effect of the stay and transfer, and second because of the right given to a defendant to essentially re-try a damages award, and reduce such an award." "Stated another way, in [Leavitt's] opinion, limitation actions can reduce the true value of a case, and would have done so in this case, had one been filed." "The issue of the valuation of the vessel and the pending freight would have been raised to the federal court sitting in the limitation proceeding." Leavitt affirmed that at the time of his injury, "Flores was a

---

[6] Larry Matteson affirmed in his affidavit that on the date of Flores's injury, Matteson "supplied to the dredge *Iowa* means and equipment to kill spiders and remove them from the vessel, and these means and equipment were being used." The affidavit further stated that "[b]efore Flores alleged he was bitten by a spider while employed by [Matteson], [Matteson] had no knowledge of any prior allegations of employees being bitten by spiders, and [Matteson] never received any such allegations by others afterwards."

deckhand assigned to a tender, *Melissa K.*, which "had a value of $75,000." In Leavitt's opinion, "given the value of the vessel and the pending freight, the court would have limited the value of the Melissa K to $75,000, and with pending freight to $90,447.00, or theoretically if the flotilla doctrine applied" to the case, "the value of the Iowa and Melissa K together, including pending freight," would "yield[] a limitation fund of $2,050,447.00."

Like Leavitt, Bale in his affidavit criticized Skyler and Brown Sims for failing to file a special appearance, for failing to plead, as an affirmative defense, limitation of liability under maritime law, and for failing to file a Petition for Exoneration From, and Limitation of Liability Action in federal court pursuant to the Limitation of Liability Act. Like Leavitt, Bale stated that in his experience Starr County "is known for producing plaintiff-favorable results in Jones Act cases, in particular dredge cases." Bale stated that he reviewed Matteson's "initial status report where Nelson Skyler and Brown Sims report on this issue," and Bale would have expected "in the exercise of reasonable diligence a defendant such as Matteson through competent defense counsel in such a case" to "use all procedural mechanisms at their disposal to move the case out of Starr County in order to guard against an unfavorable result from the defense perspective." According to Bale, "having defended other cases in South Texas, and settling those before trial, the value of personal injury cases in South Texas is higher than in other jurisdictions." For the same reasons as Leavitt, Bale stated that a reasonable defense attorney would have filed a special appearance, which if upheld, would have resulted in the case being tried or settled outside of Starr County, thus resulting in a lower settlement value or a lower jury verdict. Bale stated that "[r]egardless of the ruling on a special appearance," the filing of one "would have allowed an interlocutory appeal which would have potentially suppressed the value of the *Flores* case by virtue of the delay it caused."

Bale also affirmed like Leavitt that if Skyler and Brown Sims had filed a Petition for Exoneration and/or Limitation of Liability in federal court, the filing would have stayed the *Flores* case in Starr County. According to Bale, Flores, in response, "would have had to file a claim in the federal court limitation proceeding and then move to lift the stay based on a single claim exception on appropriate stipulation or motion, which would have required Flores to file a stipulation stating in part that he would not seek to enforce any excess judgment or recovery insofar as it would exceed the appraised amount of the subject vessel." "Even if the stay was ultimately lifted" and the cause "returned to Starr County for trial, Matteson would have had an absolute right to try the limitation action in federal court," thereby reducing "the damages awarded in the *Flores* case to the value of the vessel and pending freight." Bale explained that Flores filed his original petition on March 30, 2012, pleading damages in the amount of $2,500,000. Matteson filed an answer on April 23, 2012. Bale stated that pursuant to the Limitation of Liability Act, Matteson "would have had to file his petition for exoneration or limitation of liability action in federal court in McAllen within six months of written notice of claim in excess of value of vessel." From his review of the case, Bale stated the "first notice of demand in excess of the value of vessel" was in Flores's original petition. Bale noted that the injury report showed Flores "was a deckhand assigned to a tender, *Melissa K.*," which "had a value of $75,000." "The Dredge *Iowa* had a value of $1,960,000." According to Bale, if "pending freight were even implicated," its value on the date of Flores's injury "was $15,447 for both vessels." Bale also criticized Skyler and Brown Sims for not pleading limitation of liability under maritime law as an affirmative defense in the answer filed on behalf of Matteson. Bale explained that "[b]oth of these opportunities to defend and seek limitation of liability or even exoneration from liability in federal court did not take place and the affirmative defense in state court was omitted."

In Bale's expert opinion, "the mere filing of a Petition for Exoneration or Limitation of Liability in federal court has a depressing effect on the value of Jones Act cases: first because of the disruptive effect of the stay and transfer to federal court, and second because of the right given to a defendant to essentially re-try a damages award, and reduce such an award to the value of the vessel." Bale believed Matteson's liability could have been limited to the value of the *Melissa K.* ($75,000), or $90,447 if the pending freight was included. Bale affirmed that if a limitation action had "been instituted, Matteson would have provided the appropriate security in order to obtain the benefits of the defense."[7]

Further, in Bale's opinion, Matteson could have proven lack of privity and knowledge in the underlying case. Bale explained that "[p]rivity and knowledge, if proven by a claimant such as Flores in a Petition for Exoneration or Limitation of Liability action would have prevented Matteson from taking advantage of the right to limit liability." Based on his review of the evidence, and "in particular the deposition testimony of Chris Leavitt, and the Matteson Affidavit, both of which reflect there was no knowledge of shoreside personnel or management of brown recluse spiders which allegedly caused the spider bite to Flores." Bale also noted in his review of the case, "the management had no previous reports of injuries by spider bite." Bale explained that the "issue of privity and knowledge would have been considered by a federal judge without a jury."

Bale also noted that Flores could raise "issues related to the value of pending freight, and the application of the flotilla doctrine," which are "claimant-specific defense to the limitation fund amounts to be raised in a limitation trial." Bale explained that the flotilla doctrine "aggregates the value of vessels working at a common purpose, and in the case of dredging activities, as in the

---

[7] Indeed, Larry Matteson in his affidavit affirmed that had a limitation action been filed or asserted as a defense, "and a limitation fund was required to be deposited or otherwise assured," Matteson "would have deposited the fund, or ensured the fund was otherwise secured by bond or otherwise."

*Flores* case, considers the value of the contract depending upon the activities at the time of the incident." Bale stated that the court "does not consider the value of the entire contract but looks at the discrete activity which gives rise to the incident or personal injury being claimed by the Claimant." In Bale's expert opinion, "[g]iven the discrete nature of Flores's incident, being a spider bite" that was "limited to the vessel *Melissa K.*, on which Plaintiff Flores was assigned," "no additional money would be added to the" value of the *Melissa K.* at $75,000 plus the value of the pending freight. Even if the flotilla doctrine applied and the Dredge *Iowa* "was considered part of a flotilla with the *Melissa K.*," Bale affirmed in his opinion "the total amount of the limitation fund would have been limited to $2,050,447.00," or the amount of the values of the *Melissa K.* and *Iowa* plus the pending freight. Bale noted that even if the value of the *Iowa* was considered, "the difference between the limitation amount and the settlement would be $8,040,000."

We note that Skyler and Brown Sims argue the above evidence is conclusory and claim that the affidavits do not sufficiently explain why a limitation fund would have applied or whether Matteson would have proven a lack of privity and knowledge of the company's negligence. We disagree. In reviewing the evidence, we conclude they are more than sufficient in detailing exactly why the limitation fund would apply, why the flotilla doctrine even if applicable would still result in a lower liability determination than the eventual $10 million settlement, and why Matteson had evidence that it lacked privity and knowledge of the company's negligence. We further note that Skyler and Brown Sims argue the above evidence does not meet the standard "for showing reduced settlement value" in a legal malpractice case enunciated by the Texas Supreme Court in *Elizondo v. Krist*, 415 S.W.3d 259 (Tex. 2013). The court in *Elizondo* considered inadequate settlement amounts obtained by the attorneys who had been sued by their former clients for legal malpractice. *Id.* at 259. The supreme court held the affidavit purporting to show the damage suffered by the plaintiff as a result of the legal malpractice was conclusory. *Id.* at 263. According to the court,

"legal-malpractice damages are the difference between the result obtained for the client and the result that would have been obtained with competent counsel." *Id.* In applying the facts presented in the record, the court explained that it was "undisputed that BP, a large, solvent corporation, made the decision to settle every case arising from the plant explosion." *Id.* According to the court,

> Here, where the same defendant settled thousands of cases, and indeed made the business decision to settle all cases and not try any to a verdict, we see no reason why an expert cannot base his opinion of malpractice damages on a comparison of what similarly situated plaintiffs obtained from the same defendant.

*Id*. While the affidavit at issue did list specific criteria BP focused on when determining settlement values, the affidavit did not offer "analysis to explain how these factors would be applied to the Elizondos' situation." *Id*. at 266 (citation omitted). The affidavit also failed "to link settlement amounts to specific injuries and circumstances, and provide[d] no comparison of settlement amounts of similar claims." *Id.* (citation omitted). Thus, the court concluded the affidavit offered "only conclusory and speculative opinions." *Id*. (citation omitted).

Since *Elizondo*, the supreme court has rejected the argument that the holding in *Elizondo* requires expert affidavits to provide a factual analysis of the comparators on which the expert relies in every legal malpractice case. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 680 (Tex. 2017). The supreme court emphasized that "different cases involve different injuries and different causal links." *Id.* (quoting *Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017)). "Thus, in each suit-within-a-suit inquiry, the comparison is dictated by the context of the alleged misfeasance." *Id.* "[T]he case-within-a-case analysis requires a comparison of scenarios: the actual result and the hypothetical result advanced by the plaintiff." *Id*. at 681. The Bale and Leavitt affidavits in this case compare the actual result, the $10 million settlement, with the maximum judgment that could have been obtained by Flores (and anyone else who brought claims based on Flores's injury) had Skyler and Brown Sims raised the federal limitation-of-liability statute. Both affidavits explain

why Matteson was damaged as a result. We therefore hold the affidavits are not conclusory. In reviewing the evidence submitted by Matteson, AGCS Marine, and NY Marine, including the evidence described above, we conclude that they established a prima facie case of legal malpractice against Skyler and Brown Sims.[8]

### D. *Motion for Limited Discovery*

Skyler and Brown Sims argue the trial court erred when it extended the hearing date and permitted Matteson, AGCS Marine, and NY Marine to conduct discovery related to the TCPA motion to dismiss. The TCPA requires a hearing on the motion to dismiss to be set not later than the 60th day after the date of service of the motion "unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion" except as provided by Section 27.004(c). TEX. CIV. PRAC. & REM. CODE ANN. § 27.004(a). Section 27.004(c) permits a court to extend the hearing date to allow discovery under Section 27.006(b), "but in no event shall the hearing occur more than 120 days after the service of the motion." *Id*. § 27.004(c). While all discovery is generally suspended upon the filing of a motion to dismiss under the TCPA, *id*. § 27.003(c), Section 27.006(b) gives the trial court discretion, on a showing of good cause, to "allow specified and limited discovery relevant to the motion," *id*. § 27.006(b).

---

[8] Having concluded Matteson, AGCS Marine, and NY Marine presented a prima facie evidence of legal malpractice against Skyler and Brown Sims based on the allegation that they failed to raise a federal limitation defense, we need not consider whether Matteson, AGCS Marine, and NY Marine also presented prima facie evidence of a legal malpractice claim based on the allegation that they failed to file a special appearance. We have concluded they have a nonfrivolous legal malpractice claim. The policy behind the TCPA is to identify and summarily dispose of frivolous lawsuits designed only to chill First Amendment rights. *See In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015). Skyler and Brown Sims in their briefing have urged a methodical, summary-judgment like approach to these cases. We cannot conclude the Legislature had the intent of bogging down appellate courts in this kind of detailed and time-consuming analysis, especially when the motion was filed at the very beginning of the case and only limited discovery has occurred.

In their response to the motion to dismiss, Matteson, AGCS Marine, and NY Marine requested limited discovery, explaining this was a legal malpractice case that had just been filed, no discovery had occurred, and the prior litigation involved complicated issues of maritime law and resulted in a multi-million-dollar verdict. They requested limited depositions focusing on Skyler's and Brown Sim's "decision-making processes, internal analysis, and failures to act" in the *Flores* case. At a hearing on June 13, 2018, the trial court granted the request for limited discovery, overruled Skyler and Brown Sim's objection that there had been no showing of good cause, and continued the hearing until August 1, 2018. The trial court ordered that Matteson, AGCS Marine, and NY Marine could take the depositions of (1) Skyler, (2) a corporate representative for the law firm that represented Flores in the underlying litigation, and (3) a corporate representative for Matteson. The trial court further limited the scope of all three depositions, tailoring the topics so that they were relevant to the motion to dismiss. It ordered that the depositions had to be conducted no later than July 25, 2018. We find no abuse of discretion by the trial court.

Skyler and Brown Sims also complain that the trial court abused its discretion in denying their motion to strike the evidence that was filed by Matteson, AGCS Marine, and NY Marine the day before the August 1, 2018 hearing, arguing that the evidence was untimely filed. The TCPA, however, does not contain a deadline for filing a response to a motion to dismiss. In the absence of a rule, a trial court has discretion to determine the timeliness of a response. *Mission Wrecker Serv., S.A., Inc. v. Assured Towing, Inc.*, No. 04-17-00006-CV, 2017 WL 3270358, at *3 (Tex. App.—San Antonio 2017, pet. denied). Skyler and Brown Sims complain that Matteson, AGCS Marine, and NY Marine filed new affidavits the day before the hearing on the motion to dismiss. At the hearing, Matteson, AGCS Marine, and NY Marine told the trial court that according to the TCPA, the trial court, in determining whether to grant the motion, "shall consider the pleadings

and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). They explained they had taken the information they had learned in the depositions and included them in the affidavits for the witnesses to sign. Skyler and Brown Sims emphasize in their brief that the TCPA provides for expedited dismissal of retaliatory lawsuits and argue Matteson, AGCS Marine, and NY Marine wrongfully manipulated TCPA procedures. Skyler and Brown Sims, however, fail to recognize that the purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, and associate freely . . . *and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury*." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (emphasis added). The trial court used its discretion to permit affidavits relating to limited discovery it had concluded was necessary in determining whether the lawsuit was meritorious or frivolous. We find no abuse of discretion on the part of the trial court.[9]

### E. Nonsuited Claims

Finally, Skyler and Brown Sims argue they are entitled to attorneys' fees and sanctions requested in their motion to dismiss under the TCPA relating to four causes of action that were nonsuited by Matteson, AGCS Marine, and NY Marine before the hearing. Skyler and Brown Sims emphasize that their request for attorneys' fees and sanctions survived the nonsuit, and thus the trial court should have awarded them attorneys' fees and sanctions under the TCPA.

Under Texas law, parties have an absolute right to nonsuit their own claims for relief at any time during the litigation until they have introduced all evidence, other than rebuttal evidence,

---

[9] We note that Skyler and Brown Sims have cited *Mission Wrecker*, 2017 WL 3270358, at *3, for the proposition that this court "approved the striking" of evidence filed fifteen minutes before the hearing on the TCPA motion to dismiss, even though we recognized the TCPA contained no deadline for filing evidence. That we held the trial court in *Mission Wrecker* did not abuse its discretion in striking the evidence under those circumstances, however, does not mean that the trial court in the present case did abuse its discretion in denying the motion to strike. In both cases, we find the courts had discretion to make their respective rulings.

at trial. *See* TEX. R. CIV. P. 162; *Villafani v. Trejo*, 251 S.W.3d 466, 468-69 (Tex. 2008). Although a plaintiff decides which of its own claims to pursue or to abandon, that decision does not control the fate of a nonmoving party's independent claims for affirmative relief. *See* TEX. R. CIV. P. 162; *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n*, 390 S.W.3d 299, 300-01 (Tex. 2013); *Villafani*, 251 S.W.3d at 468-69. Thus, Skyler and Brown Sims's requests for attorneys' fees and sanctions under the TCPA are claims for affirmative relief that survived Matteson, AGCS Marine, and NY Marine's nonsuit. *See Souza v. Tessmer*, No. 04-15-00153-CV, 2015 WL 4932567, at *2 n.2 (Tex. App.—San Antonio 2015, no pet.).

Under the TCPA, if a court determines a claim should be dismissed, it "shall award to the moving party" reasonable attorney's fees "incurred in defending against the legal action as justice and equity may require," along with sanctions in an amount "the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in" the TCPA. TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a). Because we have determined that the TCPA applies in this case and because Matteson, AGCS Marine, and NY Marine nonsuited the claims at issue and did not respond with evidence supporting those claims, we conclude the trial court erred in failing to award any attorneys' fees related to those nonsuited causes of action and in failing to sanction Matteson, AGCS Marine, and NY Marine in any amount it determines sufficient to deter them from bringing similar causes of action. *See Serafine v. Blunt*, No. 03-16-00131-CV, 2017 WL 2224528, at *7 (Tex. App.—Austin May 19, 2017, pet. denied) (observing that Act's "plain language presumes that *some* sanctions award—i.e., an amount greater than zero—is required") (emphasis in original).

## CONCLUSION

Having determined that Matteson, AGCS Marine, and NY Marine established a prima facie legal malpractice claim, we affirm in part the trial court's order denying Skyler and Brown Sims's

motion to dismiss. However, because we agree the trial court erred in failing to award any amount in attorneys' fees and sanctions related to the nonsuited claims as authorized by Section 27.009(a), we reverse the trial court's order in part and order the trial court to award the reasonable attorneys' fees and sanctions related to the nonsuited claims as authorized by section 27.009(a).

Liza A. Rodriguez, Justice